UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ARMAND BOURDAIS, et al                           CIVIL ACTION

versus                                           No. 99-1434

CITY OF NEW ORLEANS, et al                       SECTION: E/3

## ORDER AND REASONS

This matter is before the Court on the Plaintiffs' motion to
tax attorney fees and costs.  Oral argument was heard on June 29,
2005.  The facts of the underlying action are set out in detail
in this Court's Finding of Fact and Conclusions of Law, dated
April 28, 2005, filed into the record at document #175, and will
be repeated only briefly here.

## BACKGROUND

This lawsuit is the last of four consolidated reverse
discrimination actions for damages pursuant to 42 U.S.C. §§ 1983
and 1988 against the City of New Orleans, filed by a number of
Caucasians who took a written test administered by the New
Orleans City Civil Service Department ("Civil Service") in 1991,
in application for the position of fire recruit with the City of
New Orleans Fire Department ("NOFD").[1]  In this case, plaintiffs'

---

[1]The first three consolidated lawsuits are Lalla v. City of New Orleans,
et al, Civ. A. 96-2640, Courtade et al v. City of New Orleans et al, Civ. A. 96-
2658, and Thezan v. City of New Orleans et al, Civ. A. 98-3591.  On March 12,
1999, the Court granted the Lalla plaintiffs' motion for partial summary judgment
on the liability issue, ruling that the use of race as a hiring factor violated

counsel represented 56 plaintiffs.  Prior to trial, the issue of
liability was decided when the court granted the plaintiffs'
motion for partial summary judgment.[2]  The remaining issues of
prescription and damages were tried to this court for six days,
beginning on June 1, 2004, and concluding on October 19, 2004.[3]
The matter was taken under submission and the parties filed post-
trial memoranda.  On April 29, 2005, judgment was rendered in
favor of 32 and against 24 of the 56 plaintiffs, for the total
amount of $486,913.00.

The plaintiffs have filed a motion requesting the following
fees and costs:

<u>Attorney fees</u>:

```
Clement Donelon  . . $300.00@hr for 1172.5 hrs = $351,825.00
Vaughn Cimini  . . . $215.00@hr for 1031 hrs   = $221,665.00
Total  . . . . . . . . . . . . . . . . . . . . . $573,490.00
(plus a 30% "delay enhancement" for delay in payment,
raising the amount for attorneys' fees to $745,537.00)
```

---

the plaintiffs' equal protection rights under the Fourteenth Amendment to the
United States Constitution.  Rec. Doc. No. 172 of Civ. A. 96-2640; 1999 WL 138900
(E.D. La.).  On January 5, 2000, this Court granted the <u>Bourdais</u> plaintiffs'
motion for partial summary judgment on the issue of liability, applying its prior
ruling on liability in the <u>Lalla</u> lawsuits to the <u>Bourdais</u> plaintiffs' lawsuit.
Rec. Doc. No. 262 of Civ. A. 96-2640; 2000 WL 14687 (E.D. La.).  On June 29,
2000, the Court granted the <u>Bourdais</u> plaintiffs' motion to sever their lawsuit
from the <u>Lalla</u> lawsuits.  Civ. A. 96-2640, Rec. Doc. No. 301. A settlement was
subsequently reached in the <u>Lalla</u> lawsuits, and on April 4, 2001, those three
lawsuits were dismissed.  Civ. A. 96-2640, Rec. Doc. No. 338.

[2]See note 1, *supra*.

[3]The testimony of 49 remaining plaintiffs (of the original 56 plaintiffs),
arranged into six groups, was heard in three trial sessions scheduled June 1,
June 21, 24, and August 9, 2004, with a fourth trial session to hear expert
testimony and other fact witnesses on October 18-19, 2004.

Expert fees:

        Holly Sharp. . . .   $32,175.00
        Max McDaniel.. . .   $ 6,747.06
        Total  . . . . . . .$38,922.06

Counsels' costs excluding expert fees:

        Donelon  . . . . . . . . . . . . . . $ 4,453.43
        Cimini . . Non-expert litigation costs:$ 6,055.99
                    Law Clerk fee               $ 4,436.25
        Total  . . . . . . . . . . . . . . . $14,945.67

The total basic request for fees and costs is $627,357.73, almost

30% more than the award itself.  With the 30% enhancement for

attorneys' fees, the total requested is $799,404.73.

## ANALYSIS

        Pursuant to 42 U.S.C. § 1988, prevailing parties in a civil

rights suit are entitled to reasonable attorney's fees as a part

of the costs.  42 U.S.C. § 1988(b).  The inclusion of expert fees

as a part of the costs is at the discretion of the district

court.  42 U.S.C. § 1988(c).  To qualify as a prevailing party, a

civil rights plaintiff must obtain at least some relief on the

merits of his claim, that is, some enforceable judgment against

the defendant.  Farrar v. Hobby, 506 U.S. 100, 112, 113 S.Ct.

566, 573, 121 L.Ed.2d 494 (1992).

        To determine an appropriate award of attorneys' fees and

costs under § 1988, the court must calculate the "lodestar" by

multiplying the number of hours reasonably spent on the

-3-

litigation by a reasonable hourly billing rate.  Hensley v. Eckerhart, 103 S.Ct. 1933, 1939 (1983).  The fee applicant bears the burden of establishing that the hours of work expended and the billing rate are reasonable.

In evaluating whether the hours of work expended and the billing rate are reasonable, the court must consider the factors described in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).  The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

The Supreme Court has, however, greatly circumscribed the use of the second, third, eighth, and ninth Johnson factors. Walker v. U.S. Department of Housing and Urban Development, 99 F.3d 761, 771-72 (5th Cir. 1996).  Generally, these factors should be "fully reflected in the number of billable hours

-4-

recorded by counsel and thus do not warrant an upward adjustment in a fee based on the number of billable hours times reasonable hourly rates." Blum v. Stenson, 465 U.S. 886, 899, 104 S.Ct. 1541, 1549 (1984). Similarly, "quality of representation" is subsumed in a reasonable hourly rate, and an upward adjustment is justified "only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charges and that the success was 'exceptional'." Id. It therefore follows, as the Fifth Circuit has repeatedly emphasized, that most of the Johnson factors are reflected in the lodestar amount and cannot be used to adjust the lodestar upward or downward. Walker v. United States Dept. of Housing & Urban Dev., 99 F.3d 761, 771 (5th Cir. 1996). The lodestar is presumptively reasonable and should be enhanced or reduced only in exceptional cases. Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993).

To summarize, this Court must first determine whether the applicants are prevailing parties. Next, it must decide the reasonable hourly billing rate for each attorney and the number of hours reasonably spent on the litigation for each attorney; then it must calculate the "lodestar" by multiplying the number of hours reasonably spent on the litigation by a reasonable

-5-

hourly billing rate.  Finally, the court must decide whether the
lodestar should be adjusted upward or downward to arrive at the
appropriate fee award.  Hensley, 461 U.S. at 434.

I.

The applicants cite, *inter alia*,[4] Hernandez v. Hill country
Telephone Co-Op, Inc., 849 F.2d 139, 144 (5th Cir. 1988) in
support of their argument that all of the plaintiffs should be
considered prevailing plaintiffs, and their fee request should
not be reduced because they did not prevail on all of their
claims.  They argue the attorneys' fees claimed should not be
reduced for the time spent in pursuit of unsuccessful claims
because all claims involved a common core of facts and were
related, and they achieved substantial success on the claims on
which they prevailed.  The cases do not support the applicants'
argument.

In Hernandez, as in the other cited cases, a single
plaintiff prevailed on some, but not all, of his claims against
the defendant.  The defendant argued, as the City argues here,
that the attorney-fee award should be reduced for time spent on
unsuccessful claims.  The Fifth Circuit disagreed, explaining as

---

[4]Thurman v. Yellow Freight Systems, Inc., 90 F.3d 1160 (6th
Cir. 1996);  Roberts v. Roadway Exp. Inc., 149 F.3d 1098, 1111 (10th
Cir. 1998);  Shrader v. OMC Aluminum Boat Group, Inc., 128 F.3d
1218, 1220 (8th Cir. 1997).

follows:

> The <u>Hensley</u> court teaches that claims for
> relief that involve a common core of facts,
> or derive from related legal theories, cannot
> be viewed as a series of discrete claims.  In
> a case such as this, the Court explained that
> "[i]f a plaintiff has obtained excellent
> results, his attorney should recover a fully
> compensatory fee."       .

<u>Id.</u> at 144, *citing* <u>Hensley</u>, 461 U.S. at 435.

This case involved 56 plaintiffs, each with an identical claim against the defendant.  Only 32 of those plaintiffs were successful.  The 24 unsuccessful plaintiffs could not prove causation, that is, none could prove that he was eligible to be hired when he claimed he should have been hired, therefore none could show any damages as a result of the City's race-based hiring practices.  These plaintiffs obtained no relief on the merits of their claims, and have no enforceable judgment against the defendant.  They are not prevailing parties, and are not entitled to their attorneys' fees and costs.

The City argues that the court should reduce the requested attorneys' fees by 43% across the board because 43% of the plaintiffs are not prevailing parties.  The court disagrees with the method proposed by the City.  Because a substantial amount of the attorneys' work was directed toward precisely the same issues for all plaintiffs, and the time spent by the attorneys on those

issues would have been the same whether there had been one plaintiff or 56 plaintiffs, an across the board cut would unfairly reduce payment for time that the attorneys would have spent on the issues in any event.  For example, the hours spent opposing the City's motion for summary judgment on prescription, opposing the City's interlocutory appeal of the court's denial of the motion for summary judgment on prescription, opposing the City motion for reconsideration of the denial of its motion for summary judgment on prescription, and finally, trying the issue of prescription on the merits would have been the same regardless of the number of plaintiffs involved.

Instead, the court reviewed each attorney's billing records to cull the time spent directly with or in regard to the specific claim of each unsuccessful plaintiff.  The court also reduced the hours claimed for trial preparation beginning on May 13, 2004, the date of the final pre-trial conference, through August 9, 2004, (including attendance at trial on June 1, June 21 and 24, and August 9) by 35%, because of the 49 plaintiffs who testified at trial, 17 (35%) were unsuccessful.  Finally, one unsuccessful plaintiff, Ron Fiorello, testified on October 18.  The court will reduce the hours claimed by both applicants for that day of trial by 30 minutes, based on the court's contemporaneous time records for that day of trial.

-8-

II.

In order to calculate the "lodestar", the Court must identify a reasonable hourly billing rate for each attorney and multiply that rate by the number of hours reasonably spent on the litigation by each attorney with reference to the Johnson factors.

The applicants assert, citing Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1047 (5th Cir. 1998) in support, that of the 12 Johnson factors, "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." They argue that 32 plaintiffs obtained an "excellent result", a judgment "worth in excess of $830,000". Memorandum in Support, pp. 6-7. Regarding the other Johnson factors, they argue that for the past six years they have spent a significant amount of time on this case on a contingent fee basis; that this case was much more difficult and involved than Lalla because it involved many more plaintiffs and because it went to trial on the merits whereas Lalla was settled; that this case required "enormous skill in a combination of areas, including civil rights, employment discrimination, evidence, and statistical analysis"; that the complexity and time consuming nature of this litigation caused applicants to forego working on other cases during their involvement with this case; and finally, that employment

-9-

discrimination cases are by their nature difficult and undesirable and not popular among lawyers.  Id. at pp. 10-11.

The City argues that the requested fees and costs are unreasonable because (1) this was the fourth of four identical cases, and even though it went to trial, the issues were not as difficult as in the Lalla case because the liability issue had already been decided and prescription was the only legal issue; (2) the applicants offered no support for the hourly rates requested and no evidence that those rates are "prevailing market rates in the relevant community"; (3) the billing records are vague or incomplete, and no billing judgment was exercised; and (4) the Court rejected the plaintiffs' "misguided" theory that only top down hiring was appropriate.  The City also claims that the degree of success obtained by the Bourdais plaintiffs' in this case is not so great because the award in this case, $486,913.00 shared by 32 successful plaintiffs, is less that the settlement recovery of $499,999.00 for the 11 Lalla plaintiffs in the prior related suits.  As for billing discretion, the City argues that the applicants' fee request should be reduced for time spent on their unsuccessful pursuit of class certification; on their unsuccessful theory that only "top-down" hiring by test scores was appropriate; and on their consultations with Dr. McDaniel, their expert witness whose causation theory and

-10-

testimony was rejected by the court.[5]

A.

To determine a reasonable hourly rate, the court must consider the prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience and reputation, as supported by evidence in the record. Blum v. Stenson, 465 U.S. 886, 895 (1984); Green v. Administrators of the Tulane Educational Fund, 284 F.3d 642, 662 (5th Cir. 2002). League of United Latin American Citizens # 4552 (LULAC) v. Roscoe Independent School District, 119 F.3d 1228, 1234 (5th Cir. 1997).

Mr. Donelon requests an hourly rate of $300, and Mr. Cimini, an hourly rate of $215. Each provided his own affidavit in support of his requested billing rate. Both affidavits are essentially a recitation of each one's *curriculum vita*. Mr. Donelon has 29 years of experience in the practice of law, the majority of which has been devoted to employment discrimination cases representing both defendants and plaintiffs. He spent five of those years as a trial attorney in the New Orleans District Office of the EEOC. Mr. Donelon states in his affidavit that he customarily charges between $200 and $250 per hour, depending on

---

[5]The Court has already addressed some of these arguments in Part I, and will not reduce the hours spent on the unsuccessful pursuit of some claims and theories.

the client and the complexity of the case.   See Ex. A, statement
28.  Mr. Cimini's affidavit states that he has been practicing
law for 12 years, two of which were spent prosecuting cases as a
assistant district attorney in Orleans Parish.  He has maintained
a private practice for 10 years, and along with Mr. Donelon, has
represented the plaintiffs in this matter since early 1999.  Mr.
Cimini does not mention what he customarily charges his clients
for his services.  The court notes that Messrs. Donelon and
Cimini have been involved in this litigation for nearly a decade,
since together they represented the <u>Lalla</u> plaintiffs.

     The applicants provided the affidavit of Dale E. Williams
(an attorney who has shared office space with Mr. Donelon for 12
years) to the effect that Williams believes an "appropriate"
hourly rate for an employment discrimination attorney in New
Orleans with Mr. Donelon's experience is between $250 and $350
per hour, and for Mr. Cimini, between $175 and $225 per hour.  In
their Reply to the City's Response Memorandum, they also offered
the affidavit of Barbara Haynie, who practiced law in the New
Orleans area from 1989 until 2004 specializing in employment
discrimination cases (occasionally as co-counsel with Mr.
Donelon).  She stated that in her opinion, a reasonable hourly
rate for counsel in the New Orleans area with a similar
background, credentials and experience as Mr. Donelon, was

-12-

between $250 and $350 per hour for a case such as this one, and for Mr. Cimini, between $175 and $215 per hour.  Counsel further state that they have a contingent fee arrangement with their clients, and to date, neither has yet received "one red cent." Memorandum, p. 10.

The City argues that the applicants have offered no evidence at all that the requested hourly rates reflect the prevailing fees charged in the New Orleans area legal community, and that the $300 per hour requested by Mr. Donelon is 50% more than this Court awarded to him in the Lalla litigation only four years ago, and the $215 per hour requested by Mr. Cimini is 43% greater than the $150 per hour he received at that time.  The court agrees that the hourly rates requested are excessive in the New Orleans area legal market.

Counsel had already been litigating the Lalla lawsuits for three years when they undertook this lawsuit.  They were familiar with the legal and factual issues involved and were well aware that the suit would take a significant amount of time.  Moreover, counsel accepted the case on a contingent fee basis knowing full well that payment would not be forthcoming until the matter had been successfully concluded.  This case may have been logistically more difficult and involved than Lalla because it involved many more plaintiffs, but it was not more legally

-13-

complex or difficult even though it went to trial on the merits whereas <u>Lalla</u> was settled.[6]  It did not require special skill in civil rights and employment discrimination because liability had already been decided and the only legal issue at trial was prescription.  Plaintiffs' theory of causation was rejected by the Court, resulting in the claims of 24 of the 56 clients being dismissed with prejudice.  It was more difficult regarding presentation of evidence and managing the testimony of the 49 plaintiffs at trial, and for statistical analyses, but the extra work involved should be reflected in the number of hours billed.

The applicants have not shown that their work on this litigation caused them to forego working on other cases during their involvement with this case.  Both actively litigated the <u>Lalla</u> lawsuits until the early 2001; both accepted <u>DeCorte v. Eddie Jordan</u>, CA 03-1239 (EDLa) in early 2003; and Mr. Donelon actively litigated <u>Motton v. Lockheed Martin Corp.</u>, 2005 La.App. LEXIS 907 (La.App. 4th Cir. 2005) during the time this case was active.  The district court's records indicate that during the time between May, 1999, when this case was filed, and April,

---

[6]As for the failure of settlement negotiations in this case, the applicants claim that the City "never offered any of the Plaintiffs a single cent to settle their claims", and the City argues that it was the plaintiffs' counsels' "obstinacy in pursuing the insupportable notion" that plaintiffs should have been hired in strict top-down order that prevented any meaningful settlement negotiations.

2005, when judgment was rendered, Mr. Donelon accepted 17 cases and Mr. Cimini accepted three cases that were filed in the Eastern District of Louisiana (including DeCorte). Finally, the Court does not find that employment discrimination cases are by their nature difficult and undesirable.

In Green, the Fifth Circuit affirmed an award by the district court in the Eastern District of Louisiana[7], entered in 2000, of an hourly rate of $175 for lead counsel, who had 14 years of experience in employment discrimination law, and $110 for an associate who had been practicing for one year. 284 F.3d 642, 662 (5th Cir. 2002). In United States ex. rel. Garibaldi v. Orleans Parish School Board, 46 F.Supp.2d 546 (E.D.La. 1999), vacated on other grounds, 244 F.3d 486 (5th Cir. 2001), Judge Duval awarded a rate of $250 per hour to the lead attorney, at that time at the "high end" of the attorney's usual range, because he found the case to be particularly difficult, and counsel could not accept more lucrative and less risky cases during that litigation. While this court does not find this case to be particularly difficult, and the attorneys were not precluded from accepting other cases, the Garibaldi award was

---

[7]Green was a Title VII case involving sexual harassment and retaliation claims. After a jury trial, final judgment was entered on December 8, 1999. On August 8, 2000, Judge Duval, Eastern District of Louisiana, entered a judgment awarding attorneys' fees.

seven years ago and the hourly rates for attorneys has appreciated during that time.

Four years ago, in <u>Lalla</u>, Mr. Donelon was awarded an hourly rate of $185 per hour; Mr. Cimini, $150 per hour.  The Court concludes that an hourly rate of $250 for Mr. Donelon and $185 for Mr. Cimini, while on the upper end of the reasonable range, is consistent with an appropriate appreciation in the market rates from those awarded in 2001 for these attorneys.  It is also consistent with Mr. Donelon's customary billing rate, and reasonable for counsel with similar backgrounds and experience in the New Orleans area.

B.

"To determine the number of hours reasonably expended on a case, a plaintiff must show that billing judgment was exercised." <u>Walker v. HUD</u>, 99 F.3d 761, 769 (5th Cir. 1996).  Billing judgment is usually shown by writing off unproductive, excessive, or redundant hours.  <u>Id.</u>"  <u>Green</u>, 284 F.3d at 662.  Generally, the remedy for failure to exercise billing judgment is to reduce the hours awarded by a percentage.  <u>Id.</u>  To establish that the hours expended are reasonable:

> "[t]he party seeking attorney's fees must present adequately documented time records to the court.  Using this time as a benchmark, the court should exclude all time that is excessive, duplicative, or inadequately

-16-

> documented.  <u>Hensley</u>, 461 U.S. at 432-34, 103
> S.Ct. at 1939; <u>Von Clark v. Butler</u>, 916 F.2d
> 255, 258 (5th Cir. 1990).  The hours
> surviving this vetting process are those
> reasonably expended on the litigation.

<u>Watkins</u>, 7 F.3d at 457.

Mr. Donelon argues that he reduced his hours billed by 54.50 hours, or 4.6% for billing discretion, and Mr. Cimini reduced his hours billed by 102.75 hours, or 10% for billing discretion, therefore no further reductions are appropriate.  <u>Id.</u> at pp. 10-11.

A close review of the billing records revealed that both attorneys billed for full time and rate for their conferences with one another, both telephone and in person.  For instance, for the period from July 10, 1999 to December 21, 2000, each billed 12.50 hours for such conferences, a total of 25 hours billed at full rate for each, amounting to $3,750 for Mr. Donelon and $2,812.50 for Mr. Cimini, a total of $6,500.50 in fees.  Each also billed at the full hourly rate for their delivery of pleadings to the Court and/or opposing counsel, or to meet with expert witnesses, and for "clerical" work.  For instance, on November 12, 2004, Mr. Donelon billed one hour for "travel to and from Kinko's for Copying of Post-Trial Memorandum", and on November 14, 2004, "Review and assembling of Post-Trial Memorandum" was billed at four hours.

-17-

Both attorneys billed in minimum time increments of .25 of an hour, so that even a three minute telephone call to confirm a meeting date or filing deadline was charged at 15 minutes.  For example, from January 5, 2000, to October 20, 2004, Mr. Donelon called to speak to the Judge's law clerk on 18 occasions, to confirm a hearing date or pleading deadline or receipt of pleadings.  He billed .25 an hour for each call, 15 minutes for brief calls that usually took less than five minutes, for a total of 4.50 hours ($1,350.00 at the $300 billing rate).  Mr. Cimini's billing records contains 745 notations for .25 an hour, the vast majority of which are telephone conferences with clients to set up meeting dates or "update" on the progress of the litigation, and with co-counsel.  At his requested rate of $215 per hour, that amounts to over $40,000.00 in fees billed in minimum 15 minute increments.  A better practice would have been to bill in minimum time increments of .10, so a three minute telephone call is billed at six rather than 15 minutes.

The Court concludes that an appropriate reduction for counsels' failure to exercise billing discretion is a total of 20% for each.  Recognizing that Mr. Donelon has already reduced his hours billed by 4.6%, his hours billed are reduced by another 15.4%.  Mr. Cimini's hours reduced by an additional 10%, recognizing his reduction of 10% for billing discretion.

-18-

The lodestar calculation is as follows:

Mr. Donelon:    $250 x 884.76[8] = $221,190.00

Mr. Cimini:     $185 x 789.37[9] = $146,033.45

### III.

The Supreme Court, in <u>Hensley</u>, instructed that a court may adjust the lodestar upward or downward if necessary to arrive at an appropriate fee award.  <u>Hensley</u>, 461 U.S. at 434.  Under § 1988, such an adjustment may be made to compensate for a delay in payment, whether by using the current rather than the historic hourly rates, or by some other adjustment of the lodestar. <u>Missouri v. Jenkins</u>, 491 U.S. 274, 284 (1989).

The applicants argue that the court should either award applicants their requested hourly rates of $300 and $215 respectively, or adjust the lodestar upward by 30% as a "delay enhancement".  They argue that they should be compensated for the six years that they have spent litigating this case, with no compensation during that time.  The six year life span of this particular litigation was not the result of any delaying tactics by the City.  Rather, it was simply the generally slow pace of litigation, which is to be expected in cases like this one.  The hourly rates the court awarded Messrs. Donelon and Cimini for

---

[8]$1172.75 - 41.75 - 85.19 - 161.05 = 884.76

[9]$1031 - 72.50 - 80.92 - 87.76 = 789.82

-19-

their work on this case over the last six years are at the upper
end of the current market rates in the New Orleans area legal
community.   No upward adjustment to the lodestar is warranted.

IV.

Section 1988 expressly allows for the award of fees for
expert witnesses.   Additionally, in <u>Jenkins</u>, the Supreme Court
observed that the term "reasonable attorney's fee" "must refer to
a reasonable fee for the work product of an attorney".  491 U.S.
at 285.   That Court held that the work of paralegals and law
clerks should be compensated at the rates at which it is billed
to clients.   <u>Id.</u>

A.

The applicants request an award for their all of their
expert fees: $32,175.00 for Ms. Sharp; $6,747.06 for Dr.
McDaniel.

1.

The City argues that the request for expert fees for Dr.
McDaniel should be rejected since the court rejected his theory
of causation and his trial testimony.[10]   The court agrees.   The

---

[10]The top-down hiring theory espoused by Dr. McDaniel actually appears to
have been developed by counsel.  Mr. Donelon's billing records reflect a number
of hours of legal time for his analysis of the NOFD's 1991 roster and the
plaintiffs' dates of hire to determine when each should have been hired using the
straight top-down hiring rather than the band used by the City.  See, for
example, four hours on July 24, 2001, and two hours on July 25, 2001, for review
of file and preparation of list of 57 plaintiffs by test scores, actual dates of
hire and dates each should have been hired.

applicants request for reimbursement for Dr. McDaniel's fee of
$6,747.06 is disallowed.

2.

The applicants argue that they are entitled to an award of
all $32,175.00 of Ms. Sharp's fee because the court used her
calculations in its judgment. The City points out that Ms.
Sharp's time included analyses of financial records and
calculations for all 56 plaintiffs during the course of the
litigation, whereas only 32 were prevailing parties. It suggests
that her fee be reduced by 43% to accurately· reflect the fees for
work only on the claims of the prevailing parties. The court
agrees. Moreover, the court did not use any of Ms. Sharp's
damage calculations because they were based on information as to
the date on which each plaintiff "should have been hired" using
Dr. McDaniel's determination of that date, which the court
rejected.

The court did use Ms. Sharp's methodology to make its own
calculations as to each successful plaintiffs' damages, along
with the methodology (but again, not the calculations) of Dr. Li,
the City's expert statistician, to determine each plaintiffs'
loss of opportunity for hire. The applicants are entitled to
reimbursement of $18,340.00 for Ms. Sharp's expert fees.

B.

Mr. Donelon requested non-expert litigation costs totaling $4,453.43.  His summary of those costs provided to the court includes references such as "Postage" for 23 months totaling $73.56; "Copies" for 28 months totaling $1,802.81; eight references to "Parking" totaling $39.50; an reference to "Pacer research" for $8.75; and a payment to "Cimini & Associates, ½ Paralegal Fees on 7-10-04" for $21.63.  None of these references have any further detail or explanation of how they are related to this litigation.  The court disallows these claimed costs.  He also requests $505.87 for costs related to Dr. Max McDaniel, for several overnight document deliveries to him and for a copy of his deposition.  These costs are disallowed.  Mr. Donelon requests $50.00 for witness fees each for Richard Carter and Sidney Barthelemy, neither of whom testified at trial.  These costs are disallowed.

The following costs are allowed: $580.08 for the court reporter for a transcript of the trial for preparation of the post trial memorandum; $3.00 for a copy of the Albright decision; $15.00 for Toni Tusa, court reporter, for a transcript of the oral hearing on the City's motion for summary judgment on prescription; $348.60 for binders, tabs, and copies for bench books and for enlargement of trial exhibits; $50.00 for Eleanor Straub's witness fee; $88.73 for copying and mailing the post-

-22-

trial memorandum; $511.91 for paralegal Mindy LaBrosse's fees for trial preparation and work on the post-trial memorandum and motion to tax fees and costs; and, $91.60 for copies of the post-trial memorandum.  The total award for Mr. Donelon's non-expert litigation costs is $1,688.97.

C.

Mr. Cimini requests his non-expert litigations costs totaling $6,055.99.  Mr. Cimini's itemized list includes 4 charges for unidentified "parking"; 32 monthly charges for unidentified "postage"; 40 monthly charges for unidentified "copies";  and one non-descriptive charge for "M. LaBrosse - paralegal fees".  The court disallows these charges.  Mr. Cimini is entitled to $150.00 for court filing fees; $225.00 for Bruce Conrad for service of complaint fees; and $1,439.61 for Southern Imaging professional copying service for copying documents needed for trial.  The total award for Mr. Cimini's non-expert litigation costs is $1,814.61.

Mr. Cimini also requested an award for his law clerk's work at $35 per hour for 126.75 hours, totaling $4,436.25.  The City does not challenge the billing rate, and the court finds it to be reasonable.  However, the billing records provided generally assign large blocks of time devoted to broadly described work generally related to the litigation.  For example, on 5/12/04, he

-23-

spent 10 hours "Assisting in review 56 plaintiff files to extract financial data for purposes of preparing responses to defendant CNO's discovery requests"; and on 5/14/04, 6 hours "Assisting in review and revision of NOFD class rosters re: those who were actually hired and should have been hired and coordination of said rosters with the 8/1/91 eligibility list."  The remainder of the entries refer to telephone conferences with various plaintiffs and groups of plaintiffs regarding trial preparation, preparation of subpoenas, review of stipulated testimony, note taking at trial, etc.  The first 16 hours itemized dealt with all 56 plaintiffs; that billing time is reduced by 43% for the time spent on the non-prevailing plaintiffs.  The remainder of the 116.75 hours, which deal with the 49 plaintiffs who testified at trial, is reduced by 35%, and for the same reasons discussed *supra*, the remaining time is reduced by 20% for lack of billing discretion.  Accordingly, Mr. Cimini is awarded $2,380.00 for law clerk Sean Brady's work.

V.

In their Reply to the City's Opposition to plaintiffs' Motion to Tax Attorneys' Fees and Costs, the applicants requested additional fees for their time spent subsequent to the initial request for their attorneys' fees and litigation costs.  Each filed a supplemental affidavit with an itemized listing of

-24-

billable hours incurred since May 10, 2005.  Mr. Donelon claims
56.75 additional hours at $300 per hour for a total of $17,025;
Mr. Cimini, 58.25 additional hours at $215 per hour for a total
of $12,523.75.  Both include time spent working on the appeal of
the judgment in this case.  Because neither is yet entitled to an
award of fees for the appeal, those hours have been stricken: Mr.
Donelon's billed hours are reduced by 21.26 to 35.50; Mr.
Cimini's billed hours are reduced by 36.50 to 21.75.  After
reducing the remaining time by 20% for lack of billing discretion
and the hourly rates to $250 and $185 respectively, both for the
reasons previously discussed,  Mr. Donelon is awarded $7,100.00
and Mr. Cimini, $3,219.00 in supplemental fees.

### CONCLUSION

In summary, the Court awards to the successful plaintiffs
the following fees and costs:

Attorney fees:
```
      Clement Donelon:     $250 x 884.76 = $221,190.00
      Vaughn Cimini:       $185 x 789.37 = $146,033.45
      Total  . . . . . . . . . . . . . . $367,223.45
```

Expert fees:
```
      Holly Sharp:   $18,340.00
      Total  . . .  .$18,340.00
```

Counsels' non-expert litigation costs:
```
      Donelon Costs:      $1,688.97
      Cimini Costs:       $1,814.61
      Cimini Law Clerk:   $2,380.00
      Total  . . . . . .  $5,883.58
```

-25-

Counsels' Supplemental Fees:
    Mr. Donelon:  $ 7,100.00
    Mr. Cimini:   $ 3,219.00
    Total  . . . . $10,319.00

Grand Total:  $401,766.03

New Orleans, Louisiana, August __24__, 2005.

                          **MARCEL LIVAUDAIS, JR.**
                  United States District Judge